

Kathleen R. Hartnett
T: +1 415 693 2071
khartnett@cooley.com

February 21, 2023

Molly C. Dwyer
Clerk of Court
U.S. Court of Appeals for the Ninth Circuit
95 Seventh Street
San Francisco, CA 94103

*Re:* ***Lindsay Hecox and Jane Doe with her next friends Jean Doe and John Doe v. Bradley Little, et al., and Madison Kenyon and Mary Marshall, Nos. 20-35813, 20-35815***
[Argued before Judges Kleinfeld, Wardlaw, and Gould on May 3, 2021]

Dear Ms. Dwyer:

Plaintiff Lindsay Hecox[1] ("Lindsay") respectfully submits this response to the Court's Order dated January 30, 2023, which directed supplemental letter briefs "identifying the claims that remain for decision in this appeal and citing any legal authority issued since May 2021 that bears on those claims." (Dkt. 191.)

The issue for decision on this appeal is unchanged from that originally briefed to this Court: whether the District Court abused its discretion in granting a preliminary injunction against enforcement of H.B. 500, an Idaho law that

---

[1] Kayden Hulquist (formerly Plaintiff "Jane Doe") has graduated from high school and now attends college out-of-state. Her claims are therefore moot. (Dkt. 149-2 at 1 n.1.) As explained herein, however, Lindsay's claims remain unchanged.

Molly C. Dwyer
February 21, 2023
Page Two

categorically bars women and girls who are transgender from playing school sports on women's and girls' teams and uses an invasive sex verification testing mechanism to enforce that exclusionary policy. (*See* Dkt. 65 at 5.) The District Court did not abuse its discretion and the preliminary injunction should be affirmed.

Since May 2021, no new binding precedent has issued regarding the question presented in this appeal. This Court and other courts have continued to recognize that discrimination based on transgender status is subject to heightened scrutiny, both as such and as a sex-based classification. Additionally, no transgender sports ban has been upheld on appeal. The couple of decisions refusing to strike down transgender exclusions are unpersuasive, do not bear on the question presented here, or both, and in any event provide no basis to disregard this Court's precedent.

**I.  The Issue for Decision By This Court – Whether the District Court Abused Its Discretion In Granting A Preliminary Injunction Against H.B. 500 – Remains Unchanged.**

The question presented on appeal is "whether the District Court abused its discretion in granting a preliminary injunction enjoining a law that categorically bars women and girls who are transgender from playing school sports on girls' teams and subjects all women and girl athletes, but not men or boy athletes, to the threat of invasive sex-verification testing to enforce that exclusionary policy." (Dkt. 65 at 5.)

Molly C. Dwyer
February 21, 2023
Page Three

This question presented remains unchanged today, and the District Court's preliminary injunction order should be affirmed.

Lindsay is a woman student athlete at Boise State University ("BSU"). (4-ER-681.) She is also transgender. (4-ER-678.) Without the preliminary injunction that has been in place since August 2020, H.B. 500 would bar Lindsay, as a transgender woman, from trying out for or playing on women's sports teams at BSU. (1-ER-84.) This includes the women's club soccer team on which she currently plays (Dkt. 165 at 7-8), as well as the women's NCAA cross-country and track teams that she tried out for in the Fall of 2020, and that she intends to try out for in the Fall of 2023. (Dkt. 164-2 at 4.) Absent the injunction currently in place, H.B. 500 also would subject any participant or prospective participant in girls' or women's school sports in Idaho, including individuals like Lindsay who are known to be transgender, to invasive sex verification procedures. (Dkt. 135-1 at 8.)

Prior to H.B. 500's enactment in March 2020, Idaho already had a mechanism in place establishing separate sports teams for girls and boys. Under the pre-H.B. 500 framework, women who are transgender, like Lindsay, could play on teams consistent with their gender identity. (Dkt. 65 at 12-13.) H.B. 500 departed from

Molly C. Dwyer
February 21, 2023
Page Four

this system to intentionally exclude girls who are transgender from playing girls' sports. (*Id*. at 9.) It did so through an ends-driven test requiring women and girls to verify their "biological sex" based on one of three criteria: (1) reproductive anatomy; (2) chromosomes; or (3) endogenous testosterone (*i.e.*, hormone levels the body produces without medical intervention). Nothing in the record indicates that any of these criteria have any bearing on athletic performance or athlete safety. Simply put, the purpose and effect of H.B. 500 was to exclude transgender girls and women.

In a lengthy and well-reasoned opinion dated August 17, 2020, the District Court granted Lindsay's motion for a preliminary injunction, prohibiting Defendants from enforcing H.B. 500 as likely violative of the Equal Protection Clause of the Fourteenth Amendment.[2] As the District Court concluded, it was "inescapable" that H.B. 500 "discriminates on the basis of transgender status" and sex, thereby triggering heightened scrutiny. (1-ER-61, 79-80.) Under heightened scrutiny, which Defendants have conceded applies (1-ER-60), it is the State's burden to show that H.B. 500 advances an important governmental interest. The District Court examined

---

[2] Lindsay's Complaint includes four additional causes of action against H.B. 500 (5-ER-757), but her preliminary injunction motion was based on her Equal Protection Clause claim.

Molly C. Dwyer
February 21, 2023
Page Five

the record and correctly found that the State was unable to meet its burden, explaining that "the Act's categorical exclusion of transgender women athletes has no relationship to ensuring equality and opportunities for female athletes in Idaho[,]" (1-ER-74), and that no evidence "suggest[ed] that the Act will increase scholarship opportunities for girls." (1-ER-75.)[3] Because the State failed to "identif[y] a legitimate interest served by the Act that the preexisting rules in Idaho did not already address, other than an invalid interest of excluding transgender women and girls from women's sports entirely," (1-ER-79), the District Court determined that Lindsay was likely to succeed on her equal protection claim.

The District Court also correctly recognized that all equitable factors favored a preliminary injunction. (1-ER-54-87.) Lindsay faced—and continues to face—irreparable harm from being denied the opportunity to try out for or play on women's sports teams at BSU. (1-ER-83-84.) Indeed, absent the preliminary injunction order presently in force, Lindsay —could not play on the women's club soccer team that she currently plays on, and she could not try out for women's cross-country and track this coming fall. Rather, she would forever be deprived the opportunity to play

---

[3] Findings of fact by the district court must not be set aside unless clearly erroneous. *See K.W. ex rel. D.W. v. Armstrong*, 789 F.3d 962, 969 (9th Cir. 2015).

Molly C. Dwyer
February 21, 2023
Page Six

intercollegiate and even intramural college sports. H.B. 500's invasive sex-verification procedures also threaten irreparable harm (1-ER-84), as they would be applied to Lindsay, or any other individual challenged as not a "biological female," were they to try to play women's sports. In contrast, the preliminary injunction harms no one, advances the public interest, and maintains the status quo, which provided for sex-separated teams and allowed for transgender women's participation under Idaho and NCAA policies. It is telling that in the two-and-a-half years since the District Court issued the preliminary injunction, there has been no evidence whatsoever of any harm or disruption.

Finally, the injunction is sufficiently specific under Rule 65(d): it clearly described the statute that it was enjoining (1-ER-66-79), the parties that are affected (1-ER-87), and the specific effect of the injunction (restoring the prior rules of sex-separation that constituted the status quo) (1-ER-55-56, 87).

In sum, the question initially briefed for this Court by the parties—whether the preliminary injunction should be affirmed—remains the question before this Court, and Lindsay respectfully submits that this Court should affirm.

Molly C. Dwyer
February 21, 2023
Page Seven

**II.     There Is No New Binding Precedent On Point, But Pertinent and Well-Reasoned Legal Authorities Since May 2021 Support Affirmance.**

Since May 2021, no new binding precedent has been issued regarding the question presented to this Court. This Court, as well as other courts, have continued to recognize that discrimination based on transgender status is subject to heightened scrutiny. Moreover, no anti-transgender sports ban has been upheld on appeal. A couple of decisions from outside this Circuit have rejected challenges to anti-transgender laws or policies, but these decisions are unpersuasive, and, in any event, cannot trump this Court's precedent. In short, no legal authority issued since May 2021 dictates that this Court should do anything other than affirm.

**A.     Laws That Discriminate Based on "Biological Sex" or "Gender Transition" Are Sex- and Transgender Status-Based Classifications Subject to Heightened Scrutiny.**

Following precedent from this Court and the Supreme Court, the District Court correctly concluded that H.B. 500 triggers heightened scrutiny under the Equal Protection Clause by discriminating on the basis of both transgender status and sex. (1-ER-59, 60). Since May 2021, this Court and courts within this Circuit have

Molly C. Dwyer
February 21, 2023
Page Eight

continued to recognize that principle.[4] So have multiple authorities from other courts.[5] And Defendants themselves concede that heightened scrutiny applies. (1-ER-60.)

For example, in *Grimm v. Gloucester County School Board*, 972 F.3d 586, 620 (4th Cir. 2020), *as amended* (Aug. 28, 2020), the Fourth Circuit affirmed the district court's ruling that the Gloucester County School Board's policy barring students from using restrooms inconsistent with their "biological gender" violated the Equal Protection Clause and Title IX. The Fourth Circuit explained that heightened scrutiny applied under the Equal Protection Clause "because the bathroom policy rests on sex-based classifications *and* because transgender people constitute at least a quasi-suspect class." *Id.* at 607 (emphasis in original). In June 2021, the Supreme Court denied the school board's petition for certiorari, *Grimm v. Gloucester County School Board*, 972 F.3d 586, *as amended* (Aug. 28, 2020), cert.

---

[4] *See, e.g., Doe v. Snyder*, 28 F.4th 103, 113 (9th Cir. 2022); *C.P. v. Blue Cross Blue Shield of Ill.*, No. 3:20-cv-06145, 2022 WL 17788148, at *6 (W.D. Wash. Dec. 19, 2022).

[5] *See, e.g., Fain v. Crouch*, No. CV 3:20-0740, 2022 WL 3051015, at *8 (S.D.W. Va. Aug. 2, 2022); *Kadel v. Folwell*, No. 1:19CV272, 2022 WL 3226731, at *21 (M.D.N.C. Aug. 10, 2022).

Molly C. Dwyer
February 21, 2023
Page Nine

denied, No. 20-1163 (June 28, 2021), ensuring that *Grimm* remains binding precedent throughout the Fourth Circuit.

Likewise, in *Brandt v. Rutledge*, 47 F.4th 661, 672 (8th Cir. 2022), the Eighth Circuit affirmed a preliminary injunction under the Equal Protection Clause against enforcement of a state law that prohibited healthcare professionals from providing or referring any individual under the age of 18 for "gender transition procedures." Relying on *Grimm* and *Bostock v. Clayton County*, 140 S. Ct. 1731, 1741 (2020) ("[I]t is impossible to discriminate against a person for being homosexual or transgender without discriminating against that individual based on sex."), the courts in *Brandt* applied heightened scrutiny to the classification at issue. *Brandt*, 47 F.4th at 670; *Brandt v. Rutledge*, 551 F. Supp. 3d 882, 889 (E.D. Ark. 2021). As such, the state was required to provide an "'exceedingly persuasive justification'" for its discrimination, which it failed to do. *Brandt*, 47 F.4th at 670 (quoting *United States v. Virginia* ("*VMI*"), 518 U.S. 515, 531 (1996)).

Additionally, in *Eknes-Tucker v. Marshall*, 603 F. Supp. 3d 1131, 1139 (M.D. Ala. 2022) (appeal argued November 18, 2022), the Middle District of Alabama partially enjoined a law that prohibited various medical treatments upon a minor "if

Molly C. Dwyer
February 21, 2023
Page Ten

the practice is performed for the purpose of attempting to alter the appearance of or affirm the minor's perception of his or her gender or sex, if that appearance or perception is inconsistent with the minor's sex as defined in this act." As in *Brandt*, the *Eknes-Tucker* court held that the challenged law was subject to heightened scrutiny under the Equal Protection Clause because it "categorically prohibits transgender minors from taking transitioning medications due to their gender nonconformity." *Id.* at 1147.[6]

### B. No Transgender Sports Ban Has Been Upheld on Appeal.

Since H.B. 500 was enacted three years ago, anti-transgender sports bans—as well as laws outlawing transgender medical care and otherwise targeting people who are transgender—have proliferated at the state level. Since May 2021, most courts to have considered the question have struck down anti-transgender sports bans. The one outlier decision is fundamentally flawed and currently on appeal.

---

[6] Courts considering anti-transgender sports bans also have applied a heightened scrutiny standard; these cases are discussed further below. *See, e.g.*, *B.P.J. v. W. Va., et al.*, 2:21-cv-00316, 2023 WL 1805883, at *2 (S.D.W. Va. Feb 7, 2023); *Roe v. Utah High Sch. Activities Ass'n*, No. 220903262, 2022 WL 3907182, at *1 (Utah Dist. Ct. Aug. 19, 2022).

Molly C. Dwyer
February 21, 2023
Page Eleven

In 2022, an Indiana federal district court preliminarily enjoined a law (similar to the one here) that categorically banned girls who are transgender from playing school sports. *A.M. by E.M. v. Indianapolis Pub. Sch.*, No. 1:22-cv-01075-JMS-DLP, 2022 WL 2951430 (S.D. Ind. July 26, 2022) (Title IX), *appeal dismissed*, No. 22-2332 (7th Cir. Jan. 19, 2023). In *A.M.*, a fifth-grade girl who is transgender challenged an Indiana law providing that: "a male, based on a student's biological sex at birth in accordance with the student's genetics and reproductive biology, may not participate on an athletic team or sport designated under this section as being a female, women's, or girls' athletic team or sport." Ind. Code § 20-33-13-4 (b). The Court determined that A.M. was likely to succeed on her Title IX claim, noting the lack of harm resulting from Plaintiff's participation on the girls' team. *Id.* at *13 ("A.M. played on the girls' softball team last season, and the State has not set forth any evidence that this harmed anyone. There is no evidence that other players complained about A.M. being on the team due to an athletic advantage, or that she actually has an athletic advantage."). The district court's decision was appealed to the Seventh Circuit, but the appeal has since been dismissed as moot.

Molly C. Dwyer
February 21, 2023
Page Twelve

Other transgender sports bans have been found to violate state constitutions. For example, in August 2022, a Utah appellate court granted a preliminary injunction preventing the enforcement of a law "which effectively bans transgender girls from competing in pre-college school-related girls sports." *Utah High Sch. Activities Ass'n*, 2022 WL 3907182, at *1. The court held that the law likely violates the equality guarantees of the Utah Constitution. In addition, a Montana court concluded, on summary judgment, that a newly enacted law that would "prohibit transgender women from participating in athletics" violated the Montana Constitution, in part, by infringing on the Board of Higher Education's constitutional authority to oversee student groups and activities. *Barrett v. State of Mont.*, No. DV-21-581B, at 5-7 (Mont. Dist. Ct. Sept. 14, 2022).

The only challenged transgender sports ban to have been upheld, to date, is West Virginia's, pursuant to the recent summary judgment ruling in *B.P.J.*, 2023 WL 1805883, at *1. That ruling is currently on appeal to the Fourth Circuit and does not support reversal here. The *B.P.J.* court initially issued a well-reasoned preliminary injunction in July 2021 that applied controlling precedent, including the Fourth Circuit's ruling in *Grimm*, to hold that West Virginia's categorical ban

Molly C. Dwyer
February 21, 2023
Page Thirteen

against transgender women and girls playing school sports was likely unconstitutional and in violation of Title IX as applied to B.P.J., a 12-year-old middle school girl. *B.P.J.*, 550 F. Supp. 3d 347. In January 2023, the District Court inexplicably reversed itself and granted summary judgment against B.P.J., dissolving the preliminary injunction. *B.P.J. v. W. Va. State Bd. of Educ.*, No. 2:21-CV-00316, 2023 WL 111875 (S.D.W. Va. Jan. 5, 2023). As B.P.J. argues on appeal, the district court's reasoning was deeply flawed in several respects, including applying the incorrect legal standard, flouting controlling precedent, and ignoring the voluminous record—all without reconciling its ruling with the preliminary injunction order. Motion for Stay Pending Appeal, *B.P.J. v. W. Va. State Bd. of Educ.*, No. 23-1078 (4th Cir. 2023), ECF No. 34. The out-of-circuit B.P.J. summary judgment ruling is unpersuasive and has no precedential force here, and thus provides no basis for determining that Judge Nye abused his discretion in issuing his well-reasoned preliminary injunction order.

    **C.    The Eleventh Circuit's Decision in *Adams* Does Not Support Reversal.**

As explained in Lindsay's response to the 28(j) letter filed by Defendant-Intervenor, the Eleventh Circuit's ruling in *Adams v. School Board of St. Johns*

Molly C. Dwyer
February 21, 2023
Page Fourteen

*County*—which upheld a policy excluding transgender students from using the bathroom consistent with their gender identity—conflicts with this Court's precedent (and precedent from other circuits). (*See* Dkt. 189); *supra* Section II.A. Among other things, the Eleventh Circuit analyzed the claim at issue solely as one of sex discrimination rather than as also discrimination based on transgender status. (Dkt. 189.) This alone distinguishes the case from this Court's precedent. *See Karnoski v. Trump*, 926 F.3d 1180, 1201 (9th Cir. 2019).[7] The proper inquiry in this case is whether Appellants have demonstrated an "exceedingly persuasive justification" for the State's categorical ban of all women and girls who are transgender from school sports. *VMI*, 518 U.S. at 533. For the reasons stated in Lindsay's briefing, Appellants have not. (*See, e.g.*, Dkt. 65 at 26-37.)

Additionally, the privacy interests alleged in *Adams* are distinct from the State's interests asserted here. Under heightened scrutiny, the Court must evaluate

---

[7] *Adams* suggested that under *Geduldig v. Aiello*, 417 U.S. 484 (1974), the bathroom policy did not "facially discriminate on the basis of transgender status." *Adams v. Sch. Bd. of St. Johns Cnty.*, 57 F.4th 791, 809 (11th Cir. 2022). This suggestion appears to be based on the notion that a classification on the basis of "biological sex" is distinct from classifications on the basis of sex or transgender status. However, as Lindsay has explained, *see* Dkt. 65 at 36-37, *Geduldig* held no such thing, and such an analysis would conflict with this Court's holding in *Karnoski*.

Molly C. Dwyer
February 21, 2023
Page Fifteen

the actual, "genuine" government interests that the State said justified H.B. 500 when the legislature passed it. *VMI*, 518 U.S. at 533. The state's justifications of the purported state interests in *Adams*—which are distinct from the state's justifications here—are therefore irrelevant to this Court's inquiry of whether H.B. 500 survives constitutional scrutiny. *Adams*, 57 F.4th at 793.

***

The District Court's preliminary injunction order should be affirmed.

Respectfully submitted,

*/s/ Kathleen R. Hartnett*
Kathleen R. Hartnett