

August 14, 2023

**VIA EM/ECF**
Molly C. Dwyer
Clerk of the Court
United States Court of Appeals
for the Ninth Circuit
95 Seventh Street
San Francisco, CA 94103

    Re:    *Hecox, et al. v. Little, et al.*
             Appeal Nos. 20-35813 and 20-35815

Dear Ms. Dwyer,

In Plaintiff-Appellee's July 31 letter, Hecox cites *Doe v. Horne*, No. CV-23-00185-TUC-JGZ, 2023 WL 4661831 (D. Ariz. July 20, 2023), saying it "provides further support" for Hecox's arguments. Dkt. 216-1. It does not.

First, *Horne* incorrectly applied the intermediate-scrutiny standard, asking whether the law furthers state interests when applied to a particular plaintiff rather than whether it substantially furthers state interests more broadly. That contradicts binding circuit and Supreme Court precedent. Dkt. 33 at 18–39; Dkt. 111 at 12–15.

Second, *Horne* is distinguishable. As Hecox concedes, the athletes in *Horne* challenged Arizona's Save Women's Sports Act as applied to them. Dkt. 216-1. And neither athlete had experienced male puberty—nor would they. *Horne*, at *1, *4–5. One was 11, had been monitored for signs of puberty and prescribed puberty blockers, and had "not and [would] not experience any of the physiological changes that increased testosterone levels would cause in a pubescent boy." *Id.* at *4, *13. The other was 15, had taken puberty blockers since 11, and had "not experienced the physiological changes that increased testosterone levels would cause in a pubescent boy." *Id.* at *5, *14.

Those facts were dispositive. The court referenced "puberty" close to 70 times in its opinion, finding the act unconstitutional *as applied to those two athletes* because "no empirical evidence in the record" showed that males "who have not experienced puberty, have any physiological advantages over other girls." *Id.* at *18.

440 First Street NW Suite 600, Washington D.C. 20001   Phone: 202.393.8690   Fax: 202.347.3622   ADFlegal.org

Molly C. Dwyer
August 14, 2023
Page 2

In contrast, Hecox *has* experienced male puberty—with its accompanying physiological advantages—and did not start medically transitioning until college. 4-ER-679–80, 5-ER-769. Hecox also did not allege any earlier efforts to offset puberty's effects.

In fact, Hecox has conceded that "going through endogenous puberty" causes "permanent physical changes." 5-ER-791–92. So while *Horne* disregarded expert evidence about how such changes "are not reversed by testosterone suppression after puberty or are reduced only modestly, leaving a large advantage over female athletes," *Horne*, at *10, the same expert evidence is dispositive here, 3-ER-423–87.

Thus, *Horne* applied the wrong legal standard and does not control the very different facts presented here.

                                                 Respectfully Submitted,

                                                 *s/ Christopher P. Schandevel*
                                                 Christopher P. Schandevel
                                                 *Counsel for Intervenors-Appellants*

cc: Counsel of Record via CM/ECF